**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN W. VAN TUBERGEN, JR.,**<br><br>Appellant,<br><br>v.<br><br>**BLOCKFI, INC.,**<br><br>Appellee. | Civil Action No. 25-17756 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon an appeal filed by Appellant-Claimant John W. Van Tubergen Jr. ("Appellant" or "Van Tubergen") of the Bankruptcy Court's Order Granting Wind-Down Debtors' Motion for Entry of an Order Adjudicating the Merits of Van Tubergen's Claim No. 7233 Related to Purportedly Missing ETH and Fixing the Value of that Claim at $0.[1] (the "Appeal," ECF No. 1.) Appellant filed a moving brief in support of the Appeal, ("Appellant Br.," ECF No. 11), and an Appendix, (ECF No. 12).[2] Appellee-Debtor BlockFi entities[3] (collectively, "BlockFi") filed an opposition brief ("Appellee Br.," ECF No. 14.) Appellant filed a reply brief. ("Reply Br.," ECF No. 20.)

[1] The Bankruptcy Court's Opinion (ECF No. 1-3) in connection with the referenced order is referred to hereinafter as the "Bankruptcy Court's Opinion").
[2] As discussed below, the parties agree that the factual record governing this Appeal is set forth in this Court's Remand Opinion, Bk. Dkt. No. 2663 (the "Remand Opinion"). Therefore, the Appendix submitted in connection with the initial appeal which the Remand Opinion addressed will be the relevant record on this Appeal. *See infra*, n.4.
[3] Although this Court's docket for this matter shows that only BlockFi Inc. is responding to this Appeal, the Appellee-Debtors in this Chapter 11 case are actually a collection of the following BlockFi entities: BlockFi Inc.; BlockFi Trading LLC; BlockFi Lending LLC; BlockFi Wallet LLC; BlockFi Ventures LLC; BlockFi International Ltd.; BlockFi Investment Products LLC; BlockFi Services, Inc.; and BlockFi Lending II LLC.

The Court has carefully considered the parties' submissions and decides the Appeal without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth herein, the Court will **AFFIRM** the Bankruptcy Court's Order Granting Wind-Down Debtors' Motion for Entry of an Order Adjudicating the Merits of Van Tubergen's Claim No. 7233 Related to Purportedly Missing ETH and Fixing the Value of that Claim at $0.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. FACTUAL BACKGROUND

The Parties both adopt the facts set forth in this Court's April 14, 2025 Opinion (the "Remand Opinion") (24-cv-06404-ZNQ (the "Initial Appeal"), ECF. No. 16). Therefore, the Court restates the facts set forth in that opinion below.[4]

In April 2019, Appellant opened a depository account with BlockFi Lending and sought a series of loans. (AR at 45, 273.) The parties executed a total of thirty-seven loan security agreements ("LSA" in the singular, or "LSAs" in the plural) throughout the course of their relationship, during which Appellant borrowed approximately $40 million from BlockFi. (*Id.* at 18–19.) Each of the LSAs require Appellant to pledge a specified amount of cryptocurrency—either Bitcoin ("BTC") or Ethereum ("ETH")[5]—as collateral securing the loan. (*Id.* at 19–25, 44.) The LSAs also provide that Appellant was to maintain a loan-to-value ratio ("LTV ratio") such that the outstanding principal balance of each loan was less than or equal to a specified percentage of the value of the collateral. (*Id.* at 19–30, 45.) The LTV ratio was calculated by dividing the dollar value of the loan by the dollar value of the collateral pledged. (*Id.* at 86.) Each of the LSAs

[4] Because the Parties agree that the facts set forth in the Remand Opinion govern the issues on appeal, this Court identifies and cites herein the appendix that Appellee-Debtor BlockFi entities (collectively, "BlockFi") submitted in tandem with their opposition to Appellant's appeal of the Bankruptcy Court's Orders Granting Wind-Down Debtors' Seventh Omnibus Objection to Claim No. 7233 and Denying Appellant's Motion for Reconsideration, which was the subject of the Initial Appeal and the subsequent Remand Opinion. The appendix is listed as ECF No. 11-1 on the Initial Appeal docket and referred to herein as the Appellate Record ("AR").

[5] There are two types of Ethereum. "ETH" denotes Ethereum cryptocurrency, not Ethereum Classic cryptocurrency.

also define "market value" of the collateral as either the "product or the amount of the collateral times the last trade price for that type of collateral on the Gemini website or the market value determined by BlockFi in its reasonable discretion." (*Id.* at 46, 278, 340, 400, 424, 428, 442.)

If at any time the LTV ratio rose to a "Triggering Point," BlockFi was permitted to issue a margin call whereby Appellant had 72 hours to pledge additional collateral sufficient to bring the LTV value below 50 percent, the agreed-upon reset value. (*Id.*) Failure to pledge additional collateral after a margin call constitutes default under the LSAs. (*Id.* at 47.)[6] BlockFi would send out email notices to borrowers like Appellant in the event that the LTV ratios surpassed the applicable Triggering Point. (*Id.* at 159, 249, 252, 267.)

After entering into the LSAs, Appellant's loans reached their Triggering Points on multiple occasions. (*Id.* at 131, 249, 252, 263, 267, 274.) As a result, pursuant to the LSAs, BlockFi issued margin calls and Appellant was required to post additional collateral to avoid liquidation. (*Id.*) Appellant did not timely reply to the margin calls and BlockFi liquidated the collateral. (*See id.*)

### B. PROCEDURAL HISTORY

The factual background and procedural history of the matter are well known to the parties and, relevant to this Appeal, was aptly outlined in the Bankruptcy Court Opinion. As such, they will not be repeated in detail here, and the Court will adopt the Bankruptcy Court Opinion's procedural history.[7]

BlockFi Inc. and its affiliated debtors commenced these Chapter 11 cases on November 28, 2022. (Bk. Dkt. No. 1.) On October 3, 2023, this Court entered its Confirmation Order

[6] The Triggering Point was 70% for each Loan except Loan 1a118e43, which had a Triggering Point of 80%. (AR at 45.) Also, for Loan 1a118e43, the Reset LTV was 60%. (*Id.* at 68.) The Max LTV was 80% for each loan except Loan 1a118e43, which had a Max LTV of 90%. (*Id.* at 46, 68.)

[7] Documents on the Bankruptcy Court's Docket, Case No. 22-19361-MBK, are referred to hereinafter by "Bk. Dkt. No."

approving the Debtors Third Amended Joint Chapter 11 Plan of Reorganization ("the Plan"). (Bk. Dkt. No. 1655.) The Plan became effective on October 24, 2023, and a Plan Administrator was thereafter vested with authority to administer remaining estate assets and reconcile disputed claims. (*Id.*) Among the claims filed in this case was Proof of Claim No. 7233, submitted by Mr. Van Tubergen. That claim asserted, among other things, that 895 ETH was missing from Loan No. 1a118e43 (the LSA or e43 LSA), which he argued BlockFi was obligated to reinstate as part of a purported collateral reinstatement agreement. (Bk. Dkt. No. 2518 at 21.)

On January 16, 2024, after the parties' briefing had concluded, the Bankruptcy Court held an evidentiary hearing on Mr. Van Tubergen's Claim. On February 2024, the Bankruptcy Court sustained the Wind-Down Debtors Seventh Omnibus Objection to the claim, finding that Mr. Van Tubergen had failed to establish that he ever had deposited or transferred the disputed ETH and crediting the Wind-Down Debtors evidence that the higher collateral figure in the LSA was the result of a scrivener s error. (Bk. Dkt. No. 2120.) The court accordingly disallowed the claim except for the nominal amount of $19.07. (Bk. Dkt. No. 2122.) Mr. Van Tubergen appealed.

On April 14, 2025, this Court affirmed the Bankruptcy Court's rulings in substantial part but remanded for further findings on the narrow issue of the missing ETH claim. (Bk. Dkt. No. 2518.) Specifically, this Court asked the Bankruptcy Court to address which party bore responsibility for providing the collateral under the e43 LSA and to clarify the amount of collateral that was required to be posted. (*Id.*) In all other respects, the disallowance of Mr. Van Tubergen's claim was affirmed. (*Id.*) On remand, the Wind-Down Debtors requested that the Bankruptcy Court adjudicate the missing ETH claim at zero or, alternatively, estimate it at zero pursuant to section 502(c) of the Bankruptcy Code and the terms of the confirmed Plan. (Bk. Dkt. No. 2573.)

## II. SUBJECT MATTER JURISDICTION

This Court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a).

## III. LEGAL STANDARD

A district court reviews a bankruptcy court's "legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for an abuse thereof." *In re Rashid*, 210 F.3d 201, 205 (3d Cir. 2000); *see In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995) ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .") (quoting Frmr. Fed. R. Bankr. P. 8013); *see also In re Great Atl. & Pac. Tea Co., Inc.*, Civ. No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015) (although Fed. R. Bankr. P. 8013 was removed in the new Federal Rules of Bankruptcy Procedure "logic still compels the same conclusion with respect to the appellate powers of the District Court"). When addressing mixed questions of law and fact, district courts divide the questions into their respective components, applying the clearly erroneous test to factual findings and a plenary review to questions of law. *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991).

## IV. BANKRUPTCY COURT DECISION ON REMAND

On remand, the Bankruptcy Court was tasked with determining two issues: (i) which party was obligated to fund the collateral securing the e43 Loan and (ii) how much collateral was to be funded. The Bankruptcy Court found that the language of the e43 LSA clearly and unambiguously requires Appellant to post collateral, not BlockFi. Therefore, the Bankruptcy Court concluded that given Appellant's failure to do so, he is entitled to no recovery on account of the Missing ETH

Claim, notwithstanding the amount of collateral to be posted, or any other consideration. In the alternative, the Bankruptcy Court found that even if the terms of the e43 LSA were ambiguous, parol evidence dictates that the parties intended that the e43 Loan would have certain features, including a starting LTV amount which would put the loan at immediate risk of a margin call. The Bankruptcy Court also declined to admit a "Client Loan Handbook" or other extraneous materials into the evidentiary record, explaining that the handbook predates the loan at issue and does not bear on the specific negotiation of the e43 LSA. The Bankruptcy Court concluded in the alternative that the clear and convincing intentions of the parties, buttressed by their pre-loan email communications, are incompatible with the collateral amount specified in the e43 LSA, and therefore the collateral amount listed therein is the product of scrivener's error.

## V. <u>DISCUSSION</u>

Appellant argues, *inter alia*, that the Bankruptcy Court erred when it found that there was no missing ETH because the terms of the Reinstatement Loan require that the duty to post-collateral rests solely upon the borrower — which Appellant failed to do. (Appellant Br. at 21–22.)

The Bankruptcy Court's decision to adjudicate the missing ETH at zero was based on contract interpretation. Appellant contends that the findings by the Bankruptcy Court were erroneous because the Reinstatement Loan "consists of collateral that is rolled over and collateral purchased (reinstated) by Appellee." (*Id.*) In other words, Appellant theorizes that the Reinstatement Loan was intended to reinstate the Liquidated Loan and therefore "collateralized by two buckets of collateral, both of which remained in BlockFi's possession: (i) remaining collateral backing the Liquidated Loan to be rolled over to the Reinstatement Loan and (ii) the amount of Liquidated collateral to be posted by Appellee." (*Id.* at 22.) Appellant reconciles this intended

structure in his reply brief, contending that "[h]ad the transaction been a traditional loan, there would have been no need for [BlockFi] to repurchase ETH, nor would there have been a need to roll ETH from the Liquidated Loan into the Restatement Loan." (Reply Br. at 5.) For the reasons that follow, this Court finds these arguments unpersuasive.

Under Michigan law, which governs the e43 LSA, when construing a contract or one of its provisions, "the intentions of the parties govern." *First Nat. Bank of Ypsilanti v. Redford Chevrolet Co.*, 285 N.W. 221, 223 (Mich. 1935). "To ascertain the parties' intentions, the Court looks first to the language in the written agreement." *Ordo City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co. LLC*, Civ. No. 13-14909, 2015 WL 4966883, at *10 (E.D. Mich. 2015). "[I]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning. Courts may not make a new contract for parties under the guise of a construction of the contract, if doing so will ignore the plain meaning of words chosen by the parties." *Zahn v. Kroger Co.*, 743 N.W.2d 207, 211 (Mich. 2009) (citation omitted). Should the plain language of the document not resolve the interpretation, the parties' intent should be discerned "in light of the surrounding circumstances and from a reading of the instrument as a whole." *DaimlerChrysler Motors, L.L.C. v. Bill Davis Racing, Inc.*, 408 F. Supp. 2d 337, 345 (E.D. Mich. 2005). Notably, a clear and unambiguous contract must be construed "as a matter of law and enforced as written unless contrary to public policy." *Id.* "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *Id.* (citation omitted). To be sure, "[w]here the language of the writing is not ambiguous the construction is a question of law for the court on a consideration of the entire instrument." *Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, Civ. No. 13-14909, 2015 WL 4966883, at *10 (E.D. Mich.

Aug. 20, 2015). On the other hand, "[a]mbiguous contracts generally present questions of fact for trial." *Wells Fargo Bank, NA v. MPC Inv.*, 705 F. Supp. 2d 728, 736 (E.D. Mich. 2010).

The Bankruptcy Court found that the plain language of the e43 LSA clearly and unambiguously provided that "the obligation to post sufficient collateral rested at all times with Mr. Van Tubergen. Inasmuch as it is undisputed that he failed to satisfy that obligation, the [Bankruptcy] Court need not consider any further argument to conclude that the missing ETH claim is unsupportable, and Mr. Van Tubergen is not to recover additional sums." (Bankruptcy Court Opinion at 5–6.) Thus, the Bankruptcy Court concluded that there was no "missing ETH," as Van Tubergen claims and that the text of the e43 LSA itself therefore ended its inquiry.[8]

The Bankruptcy Court's interpretation of the e43 LSA was a legal conclusion. As set forth above, this Court reviews such conclusions *de novo*. Under Michigan law, the inquiry begins with the plain language of the e43 LSA. *Dimond Rigging Co.*, 2015 WL 4966883 at *10; *Zahn v. Kroger Co.*, 743 N.W.2d at 211. Its language is relatively straightforward. Section 7(a) of the e43 LSA requires the borrower to deposit additional collateral upon the occurrence of a "triggering event." Similarly, Section 8 references the borrower's responsibility to deposit additional collateral in the event it is required. Sections 4 through 9 of the e43 LSA explicitly aggregate the borrower's duty: Section 5 defines "Collateral" as "all of Borrower's present and future rights, title and interest in the following"; Section 6 provides that the "Borrower is the sole, legal and equitable owner of the Collateral"; Section 7(a) requires the borrower to post collateral upon the occurrence of a "triggering event"; Section 8 sets forth terms of default, including when a triggering event occurs "and Borrower fails to deposit additional collateral"; and Section 9 dictates the lender's

[8] As set forth above, the Bankruptcy Court provided an alternative analysis assuming *arguendo* that the language of the e43 LSA was not clear and unambiguous.

remedies, warning that "[i]f Borrower does not meet its obligations under this Agreement, Borrower may lose the Collateral." Bk. Dkt. No. 12 at 155–161.

Neither the Bankruptcy Court nor this Court has identified, nor has Appellant cited, any provision or language in the e43 LSA that suggests that BlockFi, as lender, is required to post collateral for the loan to the benefit of the borrower.

Appellant seeks instead to import his narrative of the structure of the loan documents, arguing that because the e43 Loan "consists of collateral that is rolled over and collateral purchased (reinstated) by [BlockFi,]" it follows that the structure of the loan implies BlockFi's obligation to post collateral. (Appellant's Br. at 22.) Appellant contends that the Bankruptcy Court erred in concluding that (i) BlockFi was not under a duty to post collateral, and (ii) the missing ETH amounted to zero—because under Appellant's interpretation, BlockFi would have been required to post the difference between the total listed collateral in the e43 LSA (4,230 ETH) and Appellant's remaining unliquidated collateral (2,014 ETH). BlockFi only purchased an additional 1,320 ETH, thus bringing the total collateral to 3,334 ETH – 895 ETH short of the collateral total listed in the e43 LSA.

This Court concludes, like the Bankruptcy Court, that the language of the e43 LSA is clear and unambiguous as to the assignment of a duty to post collateral. At base, Appellant ignores the plain language of the e43 LSA. Appellant does not cite to any affirmative obligation in the e43 LSA requiring BlockFi to post collateral because no basis exists in the agreement. Instead, Appellant merely hypothesizes that because the e43 Loan was structured so that the collateral would come from two sources — Appellant and the rollover remainder of the prior liquidated loan—that required BlockFi to collateralize the loan. Insofar as Appellant's arguments ignore the plain language of Sections 4–9 of the e43 LSA, they are not persuasive.

Based up on its own *de novo* review, this Court reaches the same conclusion reached by the Bankruptcy Court with respect to the clear and unambiguous language of the parties' relevant agreement, and for the same reasons already ably articulated by that court.[9]

## VI. CONCLUSION

For the reasons stated above, this Court will **AFFIRM** the Bankruptcy Court's Order Granting Wind-Down Debtors' Motion for an Order Adjudicating the Merits of Claimant John W. Van Tubergen, Jr.'s Claim No. 7233 Related to Purportedly Missing ETH and Fixing the Value of that Claim at $0.

Date: September 30, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[9] Given that this Court's review of the Bankruptcy Court's initial analysis and conclusion, suffices to affirm the Bankruptcy Court's underlying decision, the Court does not reach the Bankruptcy Court's alternative analysis and the parties' arguments directed to it.